## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LASHON JACKS, MORRIE BELL, and ERRICK RHODES, individually, and on behalf of all others similarly situated,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | |
| v. | : | **NO. 10CV01707** |
| | : | **Judge Joan B. Gottschall** |
| **DIRECTSAT USA, LLC, UNITEK USA, LLC, JAY HEABERLIN, LLOYD RIDDLE, and DAN YANNANTUONO,** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Butler Rubin Saltarelli & Boyd

Jason S. Dubner (ARDC# 06257055)
Ursula A. Taylor (ARDC # 6287522)
70 West Madison Street, Suite 1800
Chicago, IL 60602
(312) 444-9660

Elliott Greenleaf & Siedzikowsli, P.C.

Eric J. Bronstein
Colin D. Dougherty
Gregory S. Voshell
Union Meeting Corporate Center
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

*Counsel for Defendants*

DATED: December 23, 2010

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ....................................................................................................1

STANDARD OF REVIEW .......................................................................................................1

ARGUMENT .........................................................................................................................2

    A.   PLAINTIFFS' EVIDENCE FAILS TO SUPPORT THEIR CLASS-WIDE THEORIES. ..................2

        1.   PLAINTIFFS' GENERALIZED UNDERREPORTING ALLEGATIONS .....................................3

        2.   PRE- AND POST-LIMINARY TRAVEL TIME .................................................................4

        3.   ADDITIONAL, ALLEGED OFF-THE-CLOCK WORK ...........................................................6

    B.   THIS EVIDENCE CONFIRMS PLAINTIFFS FAIL TO MEET THEIR RULE 23(A) BURDEN. .......7

        1.   PLAINTIFFS FAIL TO SATISFY THE NUMEROSITY REQUIREMENT. ..................................7

        2.   PLAINTIFFS DO NOT SATISFY RULE 23(A)(3)'S TYPICALICITY REQUIREMENT. ............8

        3.   PLAINTIFFS FAILED TO PROPERLY DEFINE THEIR PROPOSED CLASS. ..........................9

    C.   PLAINTIFFS CANNOT SATISFY RULE 23(B)(3). ...................................................10

        1.   COMMON ISSUES DO NOT PREDOMINATE. ....................................................11

        2.   PLAINTIFFS' CLASS ACTION SEEKS TO CIRCUMVENT THE FLSA. .............................14

CONCLUSION ....................................................................................................................15

## INTRODUCTION

This is an overtime action brought pursuant the Illinois Minimum Wage Act, 820 ILCS §§ 105 et seq., and Illinois common law. Plaintiffs seek class certification of their claims. They rely upon declarations from two employees who worked at only one of DirectSat's Illinois locations. Outside of these declarations Plaintiffs cite the alleged existence of putative policies and practices. Plaintiffs' unyielding reliance on their declarations and the alleged existence and enforcement of certain practices is belied by the record evidence. Thus, Plaintiffs fail to show that common polices affected the putative class at all, much less in a similar or typical manner.

## FACTUAL BACKGROUND

DirectSat performs satellite fulfillment services for DirecTV. (See Doc. No. 15, Defs.' Answer ¶ 5.) Plaintiffs are former DirectSat technicians, who installed and/or serviced DirecTV equipment; Plaintiffs worked out of Bedford Park, which is just one of DirectSat's Illinois offices. (Id. ¶¶ 1-3; Jacks Dep. at 89.).) DirectSat pays their installation technicians based on job rates. (Ex. A, 25-26; Ex. B, 25-26; Ex. C, Job Rate Sheet); see also 29 C.F.R. § 778.112.

Technicians' time is tracked on weekly time sheets. (Ex. A, 25-26; Ex. B, 25-26). DirectSat instructs its technicians to "record the actual time worked," which includes "the time [they] begin and end work." (Id.) Employees must verify their timesheets and "are responsible for ensuring that the information provided . . . is recorded accurately, honestly, and submitted by the established deadline for written approval by their Manager." (Id.; Ex. D, 10.) DirectSat "does not permit altering, falsifying, tampering with timesheets . . . ." (Id.)

## STANDARD OF REVIEW

Rule 23 governs the adjudication of Plaintiffs' instant Motion. AmChem Products v. Windsor, 521 U.S. 591 (1997); Szabo v. Bridgeport Machines, Inc., 249 F.3d 672 (7th Cir.

2001). Plaintiffs must present evidence that fulfills all four prongs of Rule 23(a) and one of the

three prongs of Rule 23(b). Pursuant to 23(a), Plaintiffs must establish that: (1) the class is so

numerous that joinder is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims/defenses of the representative parties are typical of the class; and (4) the

representative parties and their counsel will protect the interests of the class. The Court must be

"satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied" prior

to evaluating Rule 23(b). Gen. Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982).

Plaintiffs must also satisfy at least one of the three requirements under Rule 23(b).

Plaintiffs seek certification pursuant to Rule 23(b)(3), which applies when "the questions of law

or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy." A full evidentiary demonstration and legal analysis is

"indispensable" to the Rule 23 inquiries. Gen. Telephone, 457 U.S. at 160; Castano v. American

Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996); Hohider v. United Parcel Serv., Inc., 574 F.3d

169, 197 (3d Cir. 2009) (quotation omitted).[1]

## ARGUMENT

### A.    PLAINTIFFS' EVIDENCE FAILS TO SUPPORT THEIR CLASS-WIDE THEORIES.

Plaintiffs' testimony and the record evidence undermine their own declarations, which

are the only links between the putative policies upon which Plaintiffs rely and the practices

---

[1] "[T]he Court's rigorous analysis may include a 'preliminary inquiry into the merits,' and the court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'" Id.; Szabo, 249 F.3d at 675. There is "[a] critical need to determine how the case will be tried." See Rule 23, advisory note, 2003 Amend.; Hohider, 574 F.3d at 176. Plaintiffs' only statutory claim arises under the IMWL, which requires an overtime premium for hours worked in excess of forty. 820 Ill. Cons. Stat. § 105/4a; Marchman, 2006 WL 1987815, at *5.

employed at the field offices.[2]  (Ex. M, Bell Dep. at 58 (no knowledge of other field offices).)

Plaintiffs, therefore, cannot meet their evidentiary burden under Rule 23.

### 1.  PLAINTIFFS' GENERALIZED UNDERREPORTING ALLEGATIONS

Plaintiffs allege generally that they were not permitted to record more than 40 hours in a

given week (i.e., that a policy or practice exists to not pay overtime wages).  (Doc. No. 24-6, Bell

Decl. ¶ 7; Ex. F, Jack Dep. at 64-65 (stating that he was told not to work more than forty hours in

a given week).)  These allegations are contrary to DirectSat's formal policy, which requires that

technicians report all of the time that they work and provides payment for all of the time

recorded.  (Ex. A, 25-26; Ex. B, 25-26; see also Jacks Dep. at 83 (stating he knew of formal

policy); Ex. L, Rhodes Dep. at 49-50 (same); Ex. M, Bell Dep. at 41-42 (same).)  To justify

class-wide treatment of this claim, therefore, Plaintiffs must show that this "informal" policy of

preventing overtime is company-wide in scope. Pacheco v. Boar's Head Provs., Inc., 671 F.

Supp. 2d 957, 959 (W.D. Mich. 2009).  Otherwise, Plaintiffs' theory lacks a class-wide link.

Plaintiffs offer just two declarations, only one of which addresses the alleged "informal"

overtime practices.  See West v. Border Foods, Inc., 2006 WL 1892527, *6 (D. Minn. June 12,

2006) (six affidavits insufficient); Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d at 1046 (N.D.

Ill. 2003) (same).  In his Declaration, Plaintiff Bell claims that he was told "only to record forty

---

[2] Legally, Plaintiffs rely upon Farmer, et al. v. DirectSat USA, LLC, et al., but Plaintiffs fail to discuss the record, rationale or reasoning from that opinion.  The arguments raised in Farmer are different than those raised here (as is the factual record before the Court).  In Farmer, defendants took the position that the plaintiffs could not establish liability as to the entire absent class on the basis of such sparse evidence, especially given that the testimony varied.  (Id. at 13-16, 18-20.)  Here, in light of Farmer, Defendants raise several new arguments.  Moreover, (and also in light of Farmer), Defendants' arguments are targeted at the precise claims Plaintiffs raise, rather than just a general ability to prove liability on a class-wide basis.  For example, unlike the Farmer case, this Brief specifically addresses Plaintiffs' experiences as they relate to: (1) the allegedly informal policy precluding overtime; (2) the Portal-to-Portal Act claim; and (3) other alleged off-the-clock policies.  Moreover, Defendants focus on Plaintiffs' failure to identify generally applicable policies that were enforced, in practice, in a similar or typical manner.  Lastly, relying on Farmer, Plaintiffs claim that Defendants "admit" the propriety of certification; this is disingenuous.  Plaintiffs' citations provide no support; while the Farmer case and this case may rest upon similar allegations, the facts of the two cases and the record before this Court vastly differ.

3

hours or less per week." (Doc. No. 24-6.) This allegation is contradicted by Mr. Bell's own timesheets, which show he recorded <u>more than forty hours</u>. (<u>See</u> Ex. G.)[3] Moreover, his allegation is further undermined by his co-Plaintiffs, both of whom recorded more than forty hours on numerous occasions. (Exs. H, I; <u>cf.</u> Ex. M, Bell Dep. at 38 (noting dearth of complaints regarding pay).) Finally, DirectSat's payroll records, which display large amounts of overtime being recorded by, and paid to, DirectSat technicians, foreclose Plaintiffs' informal "no overtime" theory. (<u>See</u> Ex. J; <u>see also</u> Jacks Dep. at 65-66 (noting that for a portion of his employment wrote down <u>all</u> of his time on his timesheet).)[4] Thus, Plaintiffs' "no overtime" theory lacks class-wide appeal.[5]

## 2. PRE- AND POST-LIMINARY TRAVEL TIME

Plaintiffs seek to recover time spent driving to their first job and from their last job (<u>i.e.</u>, pre- and post-liminary drive-time). The Portal-to-Portal Act abolished claims for minimum or

---

[3] Mr. Bell also states in his declaration that he worked between 60 or 72 hours per week. (Doc. No. 24-6 at ¶ 4.) In his deposition, however, Mr. Bell stated that he usually began work around 7 a.m. and usually completed work at approximately 3 or 4 p.m. (Bell Dep. at 67, 87-88.) This testimony indicates that Mr. Bell worked, on average, only 8 or 9 hours per day.

[4] This case is similar to <u>Pacheco</u>, a case involving allegations under the FLSA. The <u>Pacheco</u> plaintiffs claimed the defendants employed an illegal policy of not paying for, <u>inter alia</u>, pre- and post-shift work. 671 F. Supp. 2d at 961-62. The <u>Pacheco</u> defendants, however, employed a formal policy that required payment for all this time. <u>Id.</u> at 962. Thus, the claims in <u>Pacheco</u> focused on "a disconnect between the written policy and what happens in practice." <u>Id.</u> Finding no evidence of an informal policy "not-to-follow" its formal policy, the Court denied certification "because there is a formal policy to pay employees [for all work], any failures to follow that policy will be unique to specific departments and supervisors." <u>Id.</u> at *7; <u>Cartner</u>, 2010 WL 1380037, at *3; <u>Smith</u>, 2005 WL 5336571, at *2.

[5] These discrepancies (and those additional discrepancies discussed <u>infra</u>) highlight significant credibility concerns. <u>Pacheco</u>, 671 F. Supp. 2d at 964 (reasoning that when plaintiffs allege a formal policy is not adhered to in practice, adjudication "rest[s] peculiarly on Plaintiff's credibility"). For example, Mr. Jacks' testimony undercuts his declaration. First, Mr. Jacks declared that DirectSat monitored him with GPS, but he later admitted that he had no knowledge of any GPS tracking in his truck, a fact that undermines his entire declaration. (Jacks Dep. at 200-01.) Moreover, Mr. Jacks testified that he recorded <u>all of his time</u>, including time "they basically told us not to" after the first six months of his employment. (Jacks Dep. at 66.) His declaration does not reflect this fact.

overtime wages arising from preliminary or postliminary activity engaged in by the employee. See 29 U.S.C. §254(a)(2). Congress further emphasized that travel was not to be compensated when it passed the Employee Commuting Flexibility Act, which "exempts employers from compensating employees for the use of an employer's vehicle for travel (and for activities incidental to that use)." Singh v. City of N.Y., 524 F.3d 361, 369 (2d Cir. 2008). Plaintiffs contend that they completed "principal activities" at their homes prior to commuting and, as a result, this "work" converts non-compensable travel time into compensable time under the "continuous workday doctrine." Rutti v. Lojack Corp., Inc., 596 F.3d 1046 (9th Cir. 2010).

Even if the continuous workday rule somehow applied to remote individual workers like those at issue here, adjudication of whether they are entitled to pre- and post-liminary drive time requires a daily analysis of the activities performed by each technician.[6] Plaintiffs offer no analysis to support class-wide treatment, and their testimony illustrates the disparity:

- **Plaintiff Lashon Jacks**, with the exception of the loading of his truck, does not specify in his declaration when he allegedly performed any of the pre- and post-liminary tasks he claims to have completed. More importantly, Mr. Jacks does not articulate when he performed these tasks in relation to his commuting to or from work. (See Jacks Dep. at 80, 107 (noting that he did not always receive his routes at night and, if he did not receive his route, he would be "done" for the night). The only temporal guidepost Plaintiff Jacks offers is that he loaded his truck with equipment approximately 1 hour before work. This allegation shows that, to the extent Mr. Jacks actually loaded his truck in the morning, he had discretion as to when he loaded it and intervening time interrupted any pre-liminary travel claim he has. This statement highlights the individuality in any claim that Mr. Jacks could allege and divorces Mr. Jacks experiences from those of the putative class.[7]

---

[6] Notably absent from Plaintiffs' declarations are allegations that the activities identified as the basis for the application of the continuous workday doctrine were performed immediately before or after commuting drives. If such activities were performed, for example, after eating dinner and spending time with one's family, any claim of "continuity" would be lost, even if certain discrete activities were independently compensable. Accordingly, Plaintiffs' declarations are not sufficiently specific.

[7] The actual basis of Mr. Jacks' claim is that he was not paid for the time he wrote down and that he was only paid for the "40 hour minimum." This testimony is wholly refuted by Mr. Jacks' wage statements. (Compare Jacks Dep. at 66-67, 186-190 with Ex. K, Jacks Wage Statements.) Plaintiff Jacks' entire claim, it seems, is built on a misconception about what he was paid for. This Court cannot premise class certification on a misunderstanding.

- **Plaintiff Errick Rhodes** admitted that he unloaded his truck at night and sometimes received his routes at night; however, he further admitted that he did not always remove the same equipment or the same amount of equipment, and, as a result, the time it took him to unload varied, (see Rhodes Dep. at 78, 105-11), and that he did not always receive his routes at night. (Id.) Mr. Rhodes testified that his morning routine also varied depending upon what he unloaded the previous night, whether he received his routes the previous night and how many dishes he built the previous night. (Id. at 117-18; see also Bell Dep. at 118-19 (admitting that certain of his timesheets included all of his time worked).)

Based on this evidence, assuming, arguendo, that the Court finds that the continuous workweek doctrine may apply to this case, the Court will still be forced to apply that doctrine to each individual, as the technicians did not perform anything resembling a uniform or common set of activities on a regular basis when they arrived home at night or before they left for work in the morning.[8] (Bell Dep. at 84.) Plaintiffs' commuting time claim lacks a class-wide link.

### 3. ADDITIONAL, ALLEGED OFF-THE-CLOCK WORK

Lastly, independent of their commute time, Plaintiffs seek to recover overtime wages for work allegedly performed before and after their commute. Plaintiffs, however, fail to show that generally applicable policies affected themselves or the putative class in typical ways:

- **Unloading / Loading Equipment** – Plaintiff Bell claims that he unloaded equipment from his truck and did not record this time. (See Doc. No. 24-6 ¶ 11.d.) Plaintiffs' own evidentiary submission refutes this statement. Exhibit H to Plaintiffs' Motion contains a "Property/General Liability Report," in which Plaintiff Bell was disciplined for failing to remove equipment from his truck at the end of the night. Thus, regardless of whether a policy requires Mr. Bell to remove his equipment, Plaintiffs' submission confirms that he opted not to follow the policy. Indeed, consistent with DirectSat's decision not to enforce its unloading/loading policy, Mr. Bell was not instructed to "unload" his truck; instead, Mr. Bell was instructed to "lock down" his personal and company property so that it could not be seen. (See Doc. No. 24-4.; Rhodes Dep. at 78, 105-11 (loading and unloading varied).)

- **Intermittent Drive Time** – In addition to commuting time, Plaintiffs claim that they are entitled to recover intermittent drive time (i.e., drive time between each job). Plaintiffs

---

[8] This is not a case where employees arrive at a common location every day, perform similar pre- and post-liminary "work," for a similar amount of time, and then walk a similar distance to their work station. Rather, this case involves individuals who work remotely, outside the direct supervision of their employer. Given this isolation, a trial on this issue would revolve around what the particular Plaintiffs did on their way to or from work and around what those individuals did when they get home.

acknowledge that DirectSat's formal policy requires them to record all time between their first and last job; therefore, under the formal policy all intermitted drive-time should be captured (and Plaintiffs should not have a claim). (See Jacks Dep. at 54-55.) Plaintiffs proceed with an "informal practices" theory, seemingly alleging that despite the formal policy, Plaintiffs were instructed or sua sponte decided to exclude this time. Plaintiffs have not, however, made the showing that this informal practice had any class-wide applicability. Indeed, Plaintiffs fail to even show that this policy affected them, as Plaintiffs' timesheets do not include numerous "times in" or "times out" during the day—to the contrary, Plaintiffs' timesheets display continuous blocks of time (i.e., from 8 a.m. to 8 p.m) during which intermittent drive time would be captured. Indeed, notwithstanding his inconsistent declaration, Mr. Bell testified that he recorded, uninterrupted, time from his "start" to his "finish," which necessarily includes all intermitted drive-time. (Bell. Dep. at 68.) Thus, Plaintiffs fail to make the evidentiary showing necessary to demonstrate that the alleged policy upon which they rely for class certification affected them, much less the entire class.

- **Calling Customers** – Aside from the "loading/unloading" policy, the only formal policy Plaintiffs rely upon addresses "cell phone" use. The cell-phone policy instructs technicians to call their customers before 8:30 a.m. Plaintiffs attempt to use this policy as proof that the putative class all called customers "off-the-clock." First, the policy does not require individuals to call these customers without recording their time. Second, and perhaps most importantly, even if the policy did require technicians to call customers without recording their time (which it does not), Plaintiffs admit that they called at least a majority of their daily customers after they completed their first job. (See, e.g., Rhodes Dep. at 97-98.) Moreover, Plaintiff Bell concedes that he did not always call customers, stating that he only called them "sometimes." (Bell Dep. at 62-63 (noting that sometime customers called him).) Thus, adjudication of this claim will require individual analysis to determine whether individuals call customers in the morning, when they call these customers and whether such time is recorded.

These "off-the-clock" claims are not supported by evidence that shows a policy affected the putative class in a typical manner (or even that the alleged policies existed).

## B.    THIS EVIDENCE CONFIRMS PLAINTIFFS FAIL TO MEET THEIR RULE 23(A) BURDEN.

### 1.    PLAINTIFFS FAIL TO SATISFY THE NUMEROSITY REQUIREMENT.

Rule 23(a)(1) requires that the class be "so numerous that joinder is impractical." As defined by Plaintiffs, their class includes more than forty. (See Pls.' Br. at 5.) The numerosity requirement, however, does not occur "in isolation." See Burkhart-Deal v. CitiFinancial, Inc., 2010 WL 457122, *3 (E.D. Pa. Feb. 4, 2010). Instead, "[i]mpracticality is a 'subjective determination based on number, expediency, and inconvenience of trying individual suits." Id.

In <u>Burkhart-Deal</u> the plaintiff relied on a handful of declarations to show a policy not to pay overtime. <u>Id.</u> at *2. The <u>Burkhart-Deal</u> Court found that this was not sufficient to show that the experiences of a few individuals justified a class action involving roughly 700 employees. <u>Id.</u> at *2-3. Similar to <u>Burkhart-Deal</u>, the disparate employment experiences discussed <u>supra</u>, do not establish the type of uniform or "blanket" policy or practice Plaintiffs assert. Moreover, like <u>Burkhart-Deal</u>, Plaintiffs offer the declarations of just <u>two</u> individuals (from one DirectSat location) to support their certification efforts. <u>Id.</u>; <u>cf.</u> <u>West</u>, 2006 WL 1892527, at *6; <u>Flores</u>, 289 F. Supp. 2d at 1046. Thus, this Court should find that the numerosity requirement is lacking.

## 2. PLAINTIFFS DO NOT SATISFY RULE 23(A)(3)'S TYPICALICITY REQUIREMENT.

Pursuant to Rule 23(a)(3), "the typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." <u>Fletcher</u>, 245 F.R.D. at 336. While a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members," <u>id.</u>, typicality is not satisfied where legal claims at issue are premised on divergent theories, varying practices and/or disparate conduct of the defendant, <u>see</u> <u>Retired Chicago Police Ass'n v. City of Chicago</u> ("<u>RCPA</u>"), 7 F.3d 584, 597-98 (7th Cir. 1993); <u>McIntyre v. Household Bank</u>, 2004 WL 2958690, *6-7 (N.D. Ill. 2004).

Plaintiffs' Rule 23(a)(3) argument does not focus on the claims at issue; rather, Plaintiffs simply conclude that all putative class members were technicians and, therefore, that they have all been denied overtime. This "argument" does not satisfy the necessary rigorous factual analysis. Rather, this case is similar to <u>Slayton v. Iowa College Acquisition Corp.</u>, 2010 WL 3937455 (N.D. Ill. Oct. 5, 2010). In <u>Slayton</u>, the plaintiff sought certification of minimum wage and wage payment claims, asserting her employer failed to pay overtime and required employees

to perform certain duties "off-the-clock" without compensation. Id. at *1. The court denied certification, pointing to discrepancies in the testimony of putative class members as to the amounts of time employees were required to work off-the-clock, the directives they received from supervisors regarding off-the-clock work, and the payment of overtime. Id. at *2-4. The court found "plaintiff has not established that defendant engaged in standardized conduct towards members of the proposed class. Nor has she established that her claims have the same essential characteristics as the claims of the class at large." Id. at *3; Iosello v. Lawrence, 2004 WL 2304548, *2-3 (N.D. Ill. 2004).

Similarly, Plaintiffs here attempt to use the alleged existence of policies to bind the class; Plaintiffs, however, fail to proffer evidence to support this theory. Moreover, to the extent that the policies or practices exist, Plaintiffs' own actions—contrary to their declarations—do not demonstrate that they followed the putative policies in practice. Individualized analysis would be required to adjudicate these claims, rendering them atypical under Rule 23(a)(3).

### 3. PLAINTIFFS FAILED TO PROPERLY DEFINE THEIR PROPOSED CLASS.

Plaintiffs' proposed class is impermissibly overbroad and unmanageable. "Although there is not explicit language in Rule 23 regarding this requirement, many courts have held that there is a definiteness requirement implied in Rule 23(a)." Fletcher, 245 F.R.D. at 334-35 (internal quotation omitted). "A sufficiently definite class exists if the court can ascertain the class members by reference to objective criteria." Id. Plaintiffs propose the following class:

> All individuals who were employed or are currently employed by one or more of the Defendants, their subsidiaries or affiliated companies, in the state of Illinois as technicians or other similarly titled positions at any time from June 12, 2008 to the present.

(See Pls.' Mem. at 6.) Plaintiffs fail to offer evidence that supports their proposed definition of the class. For example, the declarations of Messrs. Jacks and Bell only reference DirectSat as

their employer (not "subsidiaries or affiliated companies"). Second, Plaintiffs' only reference the Bedford Park location, which is just one of the DirectSat locations Plaintiffs attempt to group together. Finally, Plaintiffs offer no evidence to suggest their experiences are similar to experiences of individuals who were employed after they left DirectSat. Therefore, Plaintiffs' class is improperly defined, and they fail to meet their Rule 23(a) burden.

## C.     PLAINTIFFS CANNOT SATISFY RULE 23(B)(3).

Under Rule 23(b)(3), Plaintiffs must establish that questions of law and fact "predominate" over questions affecting discrete individuals and must show that the class action mechanism is "superior to other available methods of fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Fletcher, 245 F.R.D. at 331 (internal quotations and citations omitted). The Court must "determine whether the liability issues are subject to class-wide proof, [and] consider[] such factors as the elements of Plaintiffs' claims, the proof necessary for those elements, and the manageability of trial on these issues."[9] Fletcher, 245 F.R.D. at 332. Individualized issues as to both liability and damages eliminate a plaintiff's ability to establish their claims with evidence that is class wide in nature and eliminates a plaintiff's ability to establish that the class action mechanism is fair and efficient, thereby precluding a plaintiff's ability to establish the superiority element of Rule 23(b)(3).[10] Id.

---

[9] The argument set forth in this Section applies equally to the commonality requirement.

[10] Courts deny certification under Rule 23(b)(3) classes where individualized issues dominate. See, e.g., Dorman, 2010 WL 446071, at *3; Marlo v. United Parcel Serv., Inc., 251 F.R.D. 476, 483-87 (C.D. Cal. May 19, 2008); Bayshore Ford Truck v. Ford Motor Co., 2010 WL 415329 (D.N.J. 2010); Oplchenski v. Parfums Givenchy, Inc., 254 F.R.D. 489 (N.D. Ill. 2008). Indeed, where adjudication of the claims requires "individualized inquiry into facts surrounding each proposed class member," certification of a class is not proper, see Dorman, 2010 WL 446071, at *5, as the "class device is designed

The mere existence of common questions <u>does not end</u> the inquiry required by Rule 23(b)(3); rather, the question is whether <u>substantial</u> common questions <u>predominate</u>. <u>See</u> <u>Myers</u>, 2010 WL 4227452, at *8 ("Economies of time, effort, and expense in fully resolving each plaintiff's claim will only be served, and the predominance requirement satisfied . . . if the plaintiffs can show some of the above questions can be answered through generalized proof and that those common issues are more substantial than individual ones." (internal quotation and alteration omitted).); <u>Babineau</u>, 576 F.3d at 1191 (same)). Thus, even if this Court finds that some common questions exist, this Court must determine whether these questions predominate.

### 1. <u>COMMON ISSUES DO NOT PREDOMINATE.</u>

The discussion set forth <u>supra</u> concerning the factual basis for Plaintiffs' certification claims confirms that common question do not predominate. First, the record evidence does not support any class-wide policy to deny overtime; in fact, the evidence shows the opposite. Thus, Plaintiffs' claim is built upon allegedly informal overtime practices that have (at most) discrete, rather than class-wide, application. Adjudication will require analysis of each individual technician's experiences. <u>Dorman</u>, 2010 WL 446071, at *3; <u>In re: Wal-Mart Wage and Hour Employment Practices Lit.</u>, 2008 WL 3179315 (D. Nev. June 20, 2008).

Likewise, Plaintiffs' "commuting time" claim does not lend itself to class-wide adjudication. If the Court finds that the continuous workday doctrine could apply here, such a finding does not establish liability. Rather, the Court must then entertain the question of whether the doctrine <u>actually applies</u> to each technician. It is the adjudication of this question that prompts substantial individual issues that predominate over any common issues. Specifically, Plaintiffs must that they performed compensable, non-<u>de minimis</u> work directly before their first

---

to <u>avoid</u> the need for class members to become parties[,]" <u>see</u> <u>Crawford v. Equifax Payment Servs., Inc.</u>, 201 F.3d 877, 880 (7th Cir. 2000); <u>Maddock v. KB Homes, Inc.</u>, 248 F.R.D. 229, 240 (C.D. Cal. 2007).

job and after their last job. Plaintiffs' testimony demonstrates that the putative class members' daily schedules varied, prompting individualized inquiry. See Cornn v. United Parcel Service, Inc., 2005 WL 2072091, *2 (N.D. Cal. 2005).

Finally, Plaintiffs' remaining "off-the-clock" claims are premised on individual behavior that is dictated not by formal policy, but by a technician's own discretion (i.e., by discrete informal practices). This discretion is a product of, inter alia, the remote nature of the technicians' employment—i.e., the lack of centralized oversight allows the technicians to follow or ignore policies as a matter of preference. Given this discretion, Plaintiffs' claims devolve into a series of questions addressing their own behavior, the answers to which lack class-wide appeal.

Moreover, even if this Court could adjudicate some questions on a class-wide basis, those questions are not substantial and are outweighed by the individualized questions this Court must engage in order to reach a liability finding. See Ramirez v. DeCoster, 194 F.R.D. 348, 353 (D. Me. 2000) (plaintiffs "do not necessarily satisfy the requirement that questions of law or fact predominate merely by alleging a pattern or practice claim"); Harper v. Sherriff of Cook County, 581 F.3d 511, 514-15 (7th Cir. 2009) ("claiming an issue predominates does not make it so"). For example, if this Court concludes that the formal policy does require loading/unloading, this Court will still be required to determine, inter alia, whether the individuals actually did load/unload their trucks, the amount of time they spent loading and unloading, and the frequency at which they unloaded/loaded their vehicles. Thus, the "generalized" question of whether a formal policy required loading/unloading is only a small component of this Court's review. See In re Wells Fargo Home Mortg. Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009); Myers, 2010 WL 4227452, at *7; Levias, 2010 WL 358499, at *13.[11]

---

[11] Burkhart-Deal is again illustrative. When addressing Rule 23(b)(3)'s requirements, the Court held that the plaintiff's "common questions"—i.e., whether they were required to work off-the-clock and

Consistent with the reasoning offered by these courts, Defendants must address whether individuals engaged in the activities (i.e., loading/unloading) they claim to have undertaken. Defendants must also challenge a number of additional, subsidiary issues, including: (1) whether the individual knew of DirectSat's pay-for-all-time-worked policy; (2) whether the individuals were instructed by a supervisor to work during times that they were not recording; (3) whether Plaintiffs' intentional underreporting of time resulted in Plaintiffs receiving payment at a higher tech rate than they should have, thereby triggering set-off;[12] and (4) whether underreported time, if reported, prompted overtime deficiencies. Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986); Forrester v. Roth's IGA Foodliner, 646 F.2d 413, 414 (9th Cir. 1981).

The question of whether "off-the-clock" work actually gives rise to an overtime violation warrants additional discussion. Plaintiffs did not work, for example, five eight-hour shifts in a warehouse such that any off-the-clock work proven at trial would give rise to an overtime claim. Instead, on a weekly basis, individuals work a varying number of hours, including weeks where they work less than forty hours. (Ex. J.) Thus, even if this Court finds, for example, that technicians performed five to ten hours of off-the-clock work per week, this finding would not

---

whether the defendants payment system was legal—were too generalized to justify class treatment of the PMWA and PWPCL claims. 2010 WL 457122, at *4-5. Specifically, the Burkhart-Deal court reasoned:

> [O]ne must generalize at an unacceptably high level before the pieces of this litigation meld into the overall "policy" on which Plaintiff seeks to rely. The alleged wrongdoing, thus broadly formulated, masks the individual circumstances on which Plaintiff's proposed class depends. It is undisputed that Defendant's written policy requires pre-approval of overtime, as well as payment of overtime, and also requires employees to accurately record all hours worked. It is also undisputed that overtime requests were granted infrequently, and thus were not uniformly denied. Details of the departures from the "formal" policy, rather than presenting an unvarying and consistent pattern, differ in significant ways.

Id. at *4. The Burkhart-Deal Court concluded that Rule 23(a)(3) was not satisfied. Id.

[12] For example, Mr. Jacks admits that he took lunch breaks, but concedes that he did not record a time out for lunch. Thus, Mr. Jacks was paid more than he was entitled to receive. (See Jacks Dep. at 69.) Similarly, Mr. Jacks admits that his inspection only took him "a couple of minutes," which would not be compensable under the de minimis exception. (Id. at 136.)

establish liability to the class. As recently recognized in <u>Lugo v. Farmer's Pride Inc.</u>, these analyses "are relevant not only to the Court's assessment of how much compensation a given plaintiff may have been unlawfully denied, but also to its determination of whether a plaintiff may have been undercompensated at all." 2010 WL 3370809 *22 (E.D. Pa. 2010).

Thus, "this case differs from those where liability can be proven on a class-wide basis, and [where] the only material difference among plaintiffs is the amount of damages owed to each of them . . . . [I]n contrast, the liability of defendant depends on whether defendant failed to pay a particular plaintiff for compensable time spent performing [alleged off-the-clock] activities." <u>Id.</u>

### 2. PLAINTIFFS' CLASS ACTION SEEKS TO CIRCUMVENT THE FLSA.

The superiority prong also fails in this case because FLSA § 216(b) precludes a Rule 23 state law class action. <u>See Daprizio v. Harrrah's Law Vegas, Inc.</u>, 2010 WL 3259920 (D. Nev. 2010); <u>Sorensen v. CHT Corp.</u>, 2004 WL 442638, *10 (N.D. Ill. Mar. 10, 2004). "A growing number of courts, especially in this circuit, are beginning to look askance at wage actions seeking both Rule 23 class action and FLSA collective action certification." <u>Powers v. Centennial Comm. Corp.</u>, 679 F. Supp. 2d 918, 928 (N.D. Ind. 2009). "[T]he policy behind requiring FLSA plaintiffs to opt in to the class would largely be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." <u>Daprizio</u>, 2010 WL 3259920, at *5.

The inherent conflicts that arise from "parallel" classes originate from the substantive interplay between the <u>opt-out</u> nature of Rule 23 classes and the <u>opt-in</u> nature of §216(b) collective actions. <u>See Woodard v. Fedex Freight East, Inc.</u>, 250 F.R.D. 178, 187-88 (M.D. Pa. 2008). Under §216(b) of the FLSA, individuals have the substantive right to litigate their own wage and overtime claims, and they will not be included in a collective action absent affirmative

14

action on their part. See §216(b); De Ascencio, 342 F.3d at 310. If the Court were to allow a Rule 23 class, individuals who choose not to assert their FLSA rights would nonetheless be included in a Rule 23 class addressing those precise issues. This result is contrary to Congress's intent and has res judicata effect. See McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 577 (N.D. Ill. 2004); Pereira v. Foot Locker, Inc., 2009 WL 2951028, *10 (E.D. Pa. Sept. 11, 2009); Woodard, 250 F.R.D. at 186-87; see also Ellis v. Edward Jones & Co., L.P., 527 F. Supp. 2d 439, 451-52 (W.D. Pa. 2007). Here, Plaintiffs are using Rule 23 to circumvent the specific limitations that Congress enacted when it enacted §216(b) of the FLSA. This tactic violates congressional intent and undermines superiority.[13]

## CONCLUSION

For all of the foregoing reasons, this Court should deny Plaintiffs' Motion.

Respectfully submitted,

/s/ Colin D. Dougherty

Butler Rubin Saltarelli & Boyd

Jason S. Dubner (ARDC# 06257055)
Ursula A. Taylor (ARDC # 6287522)
70 West Madison Street, Suite 1800
Chicago, IL 60602
(312) 444-9660

Elliott Greenleaf & Siedzikowski, P.C.

Eric J. Bronstein
Colin D. Dougherty
Gregory S. Voshell
925 Harvest Drive, Suite 300

DATED: December 23, 2010

Blue Bell, PA 19422
(215) 977-1000

---

[13] Plaintiffs do discuss their common law claims in their Motion. Accordingly, Plaintiffs' have waived certification of their common law claims. See Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005) (reminding that court's role is not to "scour" record to find support for various legal propositions and that "[p]erfunctory or undeveloped arguments are waived"); Last Atlantis Capital LLC v. AGS Specialist Partners, ---F. Supp. 2d----, 2010 WL 4365549, *5 (N.D. Ill. Nov. 4, 2010) ("It is not the court's job to craft plaintiffs' arguments for them.").

## CERTIFICATE OF SERVICE

I, Colin D. Dougherty, Esquire, hereby certify that, on this date, I caused the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon the following:

Jac A. Cotiguala, Esquire
Jac A. Cotiguala & Associates
431 South Dearborn Street, Suite 606
Chicago, IL 60605
Attorney for Plaintiff

/s/ Colin D. Dougherty
Colin D. Dougherty

DATED: December 23, 2010