# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LASHON JACKS, MORRIE BELL, and ERRICK RHODES, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 10-cv-1707 |
| v. | ) ) | Judge Joan B. Gottschall |
| DIRECTSAT USA, LLC, UNITEK USA, LLC, JAY HEABERLIN, LLOYD RIDDLE and DAN YANNANTUONO | ) ) ) ) | Magistrate Judge Michael T. Mason |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lashon Jacks, Morrie Bell, and Errick Rhodes ("Plaintiffs") sued defendants DirectSat USA, LLC; its parent company Unitek USA, LLC; and DirectSat executives Jay Heaberlin, Lloyd Riddle, and Dan Yannantuono (collectively, "DirectSat") for alleged violations of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* On June 19, 2012, the court granted Plaintiffs' motion for class certification and certified a class of "[a]ll individuals who were employed or are currently employed by DirectSat in the state of Illinois as technicians or in other similarly titled positions at any time between June 12, 2008, and February 9, 2010." *See* ECF No. 132. DirectSat now moves to decertify this class.

## I. DECERTIFICATION

### A. Legal Standard

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "[U]ntil the court enters final judgment, a certification order is 'inherently tentative.'" *Smentek v. Sheriff of Cook County*, No. 09-cv-529, 2014 U.S. Dist. LEXIS 175982, at *21 (N.D. Ill. Dec, 22, 2014) (quoting *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 469 n.11 (1978)). "If the certification of the class is later deemed to be improvident, the court may decertify." *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981). "On a motion to decertify a class, the party seeking class certification bears the burden of producing a record demonstrating the continued propriety of maintaining the class action." *Farmer v. DirectSat USA*, No. 08-cv-3962, 2013 U.S. Dist. LEXIS 79825, at *5 (N.D. Ill. June 6, 2013) (citation and quotation marks omitted).

### B. Discussion

This case parallels two other cases brought by DirectSat technicians for alleged violations of the FLSA and state wage laws. One was before another court in this district. *See Farmer v. DirectSat USA*, No. 08-cv-3962 (N.D. Ill. Dec. 30, 2008), ECF No. 40 (certifying a class of technicians employed by DirectSat between December 3, 2006 and June 11, 2008 for claims under the IMWL and Illinois common law). The other is *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, before the United States District Court for the Western District of Wisconsin. There, the district court certified several subclasses of DirectSat technicians pursuing claims for violations of the Wisconsin,

2

Minnesota, and Pennsylvania minimum wage laws, but then decertified the classes for lack of a feasible trial plan. *See* Order, *Espenscheid*, No. 09-cv-625 (W.D. Wisc. Feb. 10, 2011), ECF No. 387.

DirectSat contends that these cases bear upon its instant motion to decertify because of their subsequent procedural history. In *Espenscheid*, after the district court certified the state-oriented classes, it subdivided them to hold bifurcated proceedings on liability and damages. *See Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2011 U.S. Dist. LEXIS 56062, at *3-4 (W.D. Wisc. May 23, 2011). However, as trial approached, the court became "concerned about the manageability of the case" and ordered briefing on whether the case should remain certified. *Id.* Class counsel responded by "opposing bifurcation and subclasses and refusing to suggest a feasible alternative, including a feasible method of determining damages." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775-76 (7th Cir. 2013). Eventually, class counsel acquiesced to dividing the class into subclasses, but still maintained that "it would be 'difficult' for [them] to provide an objective framework identifying each class member within the current class definitions without making individualized findings of liability." *Id.* at 776. "Essentially [class counsel] asked the district judge to embark on a shapeless, freewheeling trial that would combine liability and damages. . . ." *Id.* at 775. The district court rejected this plan and instead decertified the class. The plaintiffs then appealed the decertification order pursuant to Federal Rule of Civil Procedure 23(f).

On appeal, the Seventh Circuit affirmed, citing the challenges the district court faced in managing the litigation. To steer the class toward trial, the district court adopted measures ranging from employing subclasses and bifurcating proceedings to requesting

3

specific trial proposals from counsel. From the Seventh Circuit's vantage point, the district court had more than done its "duty" of "explor[ing] the possible ways of overcoming problems" that emerged as the case proceeded toward trial. The Seventh Circuit thus held that the district court's decertification ruling resulted not from any error on the district court's part, but from class counsel's "incapab[ility] of proposing a feasible litigation plan." *Id.* at 776.

This failure on class counsel's part, however, was not the only ground supporting the Seventh Circuit's decision to affirm. Regardless of class counsel's efforts, a class trial on damages was doomed because of two unavoidable complications. The first was variance in class members' damages. *Id.* DirectSat compensated its technicians "on a piece-rate system, which implies—since workers differ in their effort and efficiency— that some, maybe many, of the technicians may not work more than 40 hours a week and may even work fewer hours; others may work more than 40 hours a week." *Id.* at 773. "Variance would also result from different technicians' doing different tasks, since it's contended that the employer told them not to report time spent on some of those tasks, though—further complicating the problem of proof—some of them reported that time anyway." *Id.* at 773-74. Moreover, the piece-rate system itself made variance in damages probable because it incentivized workers to underreport their time "to impress the company with their efficiency," which the Seventh Circuit construed as "benign underreporting" disconnected from DirectSat's "unlawful conduct." *Id.* at 774. And yet a further complication was that the technicians had "no records of the amount of time they worked but didn't report on their time sheets." *Id.* at 774-75. Consequently, to prove their claims, the technicians would have had to "reconstruct[]" their unreported

time "from memory, inferred from the particulars of the jobs of the technicians did, or estimated in other ways. . . ." *Id.* at 775.

The other complication was that the district court could not use the class representatives' damages to project damages for the absent class members. "To extrapolate from the experience of the 42 [representatives] to that of the 2341 [class members] would require that all 2341 have done roughly the same amount of work, including the same amount of overtime work, and had been paid the same wage." *Id.* at 774. But no such uniformity existed. As a result, inferring "the work time of thousands of workers" from the experiences of a few would produce systemic discrepancies in damages to absent class members. *Id.* at 774. Those who worked fewer unpaid or underpaid hours than the "average representative" would receive a windfall, while those who worked more a shortfall. *Id.* at 775.

Shortly after the Seventh Circuit decided *Espenscheid*, the district court in *Farmer* decertified its class of DirectSat technicians. The *Farmer* court observed that "the parties and claims [in *Farmer* and *Espenscheid* were] nearly identical." *Farmer*, 2013 U.S. Dist. LEXIS 79825, at *14. Both sets of plaintiffs were DirectSat installation and service technicians "su[ing] DirectSat for failing to pay them for all the time they were required to work in violation of state wage and overtime laws and the FLSA." *Id.* DirectSat paid the *Espenscheid* and *Farmer* plaintiffs alike, "on a piece-rate basis, not a fixed hourly wage. . . ." *Id.* And, "like the plaintiffs in *Espenscheid* who alleged DirectSat forbid them from recording time spent on certain tasks such as calling customers, filling out paperwork, and picking up tools from the company's warehouses, [the *Farmer* plaintiffs] allege[d] DirectSat forbid them from recording time spent on certain tasks such [as]

receiving daily assignments, calling the day's first customer, driving to the first job, and unloading tools from their van." *Id.* at *14-15.

Also noteworthy to the *Farmer* court was the fact that the plaintiffs had inconsistently cited the *Espenscheid* district court's decisions as persuasive authority. In moving for class certification, the *Farmer* plaintiffs referenced the *Espenscheid* class certification order as support for their own motion. But then, after the *Espenscheid* court decertified its classes, the *Farmer* plaintiffs strained to distinguish their case from *Espenscheid*. *Id.* at *15. The *Farmer* plaintiffs, in particular, argued that the *Espenscheid* class was distinctly unmanageable because it included class members from several states; by contrast, the plaintiffs stressed, all of the *Farmer* technicians worked in Illinois, and only Illinois law would apply to their claims.

The *Farmer* court found these differences in residency and choice of law unavailing. As the court understood, potential divergences in state law played no role in the Seventh Circuit's decision to affirm. Rather, "[t]he Seventh Circuit's decision in *Espenscheid* was based on the nature of the technicians' work, the way they were paid, and Plaintiffs' proposed 'representative' proof." *Id.* at *17.

Those same touchstones of variance exist in this case and likewise require decertification. Notably, when the named plaintiffs here moved for class certification, they too relied upon the orders certifying the classes in *Espenscheid* and *Farmer*. *See* Pls.' Mot. & Mem. in Support of Class Certification at 1, ECF No. 23 (referring to *Espenscheid* as a "similar case" and *Farmer* as a lawsuit containing "identical claims"); Pls.' Reply at 7, ECF No. 43 (remarking that *Farmer* involves the "same tasks at issue"

in this case and arguing that "[t]he legal reasoning and factual analysis of the *Farmer* court [were] based upon the very points raised in this action").

Plaintiffs now strive to distance themselves from the *Espenscheid* and *Farmer* technicians and downplay the Seventh Circuit's *Espenscheid* opinion. To begin with, Plaintiffs characterize the variance in their damages as "inconsequential." However, Plaintiffs do not dispute that their damages vary in the same ways that the *Espenscheid* plaintiffs' damages varied. The Seventh Circuit could not have been clearer that variance in the class members' damages both forebodes an unmanageable trial and prevents the extrapolation of damages from the representatives to the class as a whole.

Plaintiffs, in turn, claim that they have addressed the problem of unrepresentative damages. According to Plaintiffs, the deficiency in *Espenscheid* was that class counsel could not explain how the class representatives were selected, *i.e.*, whether they volunteered, were randomly chosen, or were cherry-picked on account of their disproportionally greater damages. Here, by comparison, Plaintiffs insist that they volunteered to be class representatives after they were "contacted" by class counsel. But nothing in the record sheds a determinative light on how class counsel came up with its list of class members to contact.

Nevertheless, even if the representative class members were selected at random, that fact still would be insufficient to allow the extrapolation of the named Plaintiffs' damages to the class. *See Espenscheid*, 705 F.3d at 774. At best, only the damages of the selected representatives can be calculated because of the undisputed variance in damages across the class. *Id.*

Thus, in accordance with *Espenscheid*, the court concludes that affording class treatment to Plaintiffs' entire IMWL class is "improvident." *Eggleston*, 657 F.2d at 896. The court thus decertifies the class and considers whether partial certification pursuant to Rule 23(c)(4) is a viable alternative.

## II.     Partial Certification

Plaintiffs request, as an alternative to denying DirectSat's motion for decertification, that a class be certified as to liability issues pursuant to Federal Rule of Civil Procedure 23(c)(4). This provision provides: "When appropriate, an action may be maintained as a class action with respect to particular issues." Plaintiffs contend that issues related to DirectSat's policies and practices are appropriate for classwide resolution because common policies and practices caused each class member's individual damages.

Whether the court may certify a class to resolve a specific issue, when the whole cause of action does not meet all of the requirements for class certification under Rule 23, is an issue that has split the circuit courts. Specifically, the circuits differ over the interplay between the predominance requirement, Rule 23(b)(3), and issue certification pursuant to Rule 23(c)(4). In the Fifth Circuit, every element of a claim must satisfy the predominance requirement, and subprovision (c)(4) merely functions as "a housekeeping rule that allows courts to sever the common issues for a class trial." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996); s*ee also Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 n.12 (2d Cir. 2001) (referring to the Fifth Circuit's approach as a "strict application of the (b)(3) predominance inquiry to the entire pattern or practice claim")).

8

The Second, Third, and Ninth Circuits disagree. *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) ("*In re Nassau County*"); *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 200-02 (3d Cir. 2009); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Under the approach in these circuits, "a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." *In re Nassau County*, 461 F.3d at 227.

To date, the Seventh Circuit has not formally referenced the circuit split or picked a side. *See Chi. Teachers Union, Local 1 v. Bd. of Educ. of Chi.*, 301 F.R.D. 300, 313 (N.D. Ill. 2014) ("Whether the predominance requirement applies to the individual issue or the case as a whole is an open question in the Seventh Circuit . . . .") (Ellis, J.); *McDaniel v. Quest Communs. Corp.*, No. 05-cv-1008, 2006 U.S. Dist. LEXIS 37066, at *51-52 (N.D. Ill. May 23, 2006) ("The Seventh Circuit has yet to weigh in on" whether Rule 23(c)(4) may be harnessed to certify a class to resolve a common issue.) (Pallmeyer, J.).

However, in repeated cases, the Seventh Circuit has expressed views consistent with the approach taken by the Second, Third, and Ninth Circuits and urged district courts to exhaust all means available to them—including the use of issues-only classes—"where it is class treatment or nothing. . . ." *See Espenscheid*, 705 F.3d at 776 ("Bifurcation would not eliminate variance in damages across class members, but once liability is established damages claims can usually be settled with the aid of a special master, and trials thus avoided. . . ."); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013) (positing that class certification pursuant to Rule 23(c)(4) is one

solution to variance in class members' actual damages); *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine--if liability is established--the damages of individual class members, or homogenous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed.") (citing advisory committee notes to 1966 amendment of Rule 23(b)(3)); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490-91 (7th Cir. 2012) (endorsing use of Rule 23(c)(4) to determine "on a classwide basis" a "pair of issues" concerning the lawfulness of an employer's practices, even if partial certification would necessitate "hundreds of separate trials . . . to determine which class members were actually adversely affected by one or both of the practices and if so what loss [was] sustained"); *Hartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 896 (7th Cir. 2011) ("A damages class may be certified under Rule 23(b)(3) and particular issues identified for resolution on a class-wide basis pursuant to Rule 23(c)(4)."); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("A district court has the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments."); *Arreola v. Godinez*, 546 F.3d 788, 800-01 (7th Cir. 2008) (observing that "Rule 23(c)(1)(B) specifically recognizes the possibility of certifying not just 'class claims,' but also class 'issues'"); *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005) (suggesting that partial certification of a Rule 23(b)(3) class "to determine whether Allstate had a policy of forcing its employee agents to quit," followed by "individual hearings . . . to determine which of the members of the class were actually affected by the policy," would be "a

more efficient procedure than litigating the class-wide issue of Allstate's policy anew in more than a thousand separate lawsuits"); *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661-63 (7th Cir. 2004) (the "prospect" of conducting "separate proceedings" to determine individual class members' damages "need not defeat class treatment of the question whether the defendants violated" the law).

Notwithstanding this authority, there is some disagreement among courts in this district over which approach to adopt. *Compare Healey v. Int'l Brotherhood of Electrical Workers*, 296 F.R.D. 587, 596 (N.D. Ill. 2013) (surveying case law and concluding that "[t]he Seventh Circuit's treatment of [partial certification pursuant to Rule 23(c)(4)] is consistent with decisions in other cases in which the court has repeatedly opined that the need to determine individual issues or damages does not detract from the efficiency of conducting a class trial on common issues key to resolving the case") (Kennelly, J.) *and In re Factor VIII or IX Concentrate Blood Prods. Litig.*, No. 93-cv-7452, 2005 U.S. Dist. LEXIS 12538, at *8-9 (N.D. Ill. Mar. 1, 2005) (viewing Fifth Circuit's approach "not as an interpretation of Rule 23(c)(4)(A) but [as] a simple rejection of its language" and concurring with the interpretation of the Second, Third, and Ninth Circuits) (Grady, J.) *with Hamilton v. O'Connor Chevrolet, Inc.*, No. 02-cv-1897, 2006 U.S. Dist. LEXIS 4149, at *20-21 (N.D. Ill. June 12, 2006) (relying upon Fifth Circuit's *Castano* decision for proposition that "a class action movant cannot gerrymander predominance by suggesting that only a single issue be certified for class treatment") (Filip, J.).

This court agrees with *Healey* and *In re Factor VIII or IX Concentrate Blood Prods. Litig.* and follows the Second, Third, and Ninth Circuits regarding the use of Rule 23(c)(4). The approach employed in those circuits most closely aligns with the Seventh

Circuit's expressed views on Rule 23. Repeatedly the Seventh Circuit has encouraged "district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie*, 376 F.3d at 661; *see also Espenscheid*, 705 F.3d at 776; *Phillips*, 736 F.3d at 1083; *Butler*, 727 F.3d at 800; *McReynolds*, 672 F.3d at 490-91; *Hartman*, 634 F.3d at 896; *Arreola*, 546 F.3d at 800-01; *Saltzman*, 606 F.3d at 394; *In re Allstate Ins. Co.*, 400 F.3d at 508; *Carnegie*, 376 F.3d at 661-63. Interpreting subprovision (c)(4) to allow certification of issue-specific classes strikes this court as a workable solution to such problems.

Second, the issue-class approach most accurately reflects the plain language of Rule 23(c)(4) — both before and after it was amended in 2007. Before the amendment, Rule 23(c)(4) provided:

> When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

As the "plain language and structure establish[ed]," the pre-2007 amendment version of the rule required a court first to "identify the issues potentially appropriate for certification '*and . . . then*' [to] apply the other provisions of the rule, *i.e.*, subsection (b)(3) and its predominance analysis." *In re Nassau County*, 461 F.3d at 226 (emphasis added).

In 2007, subprovision (c)(4) was revised to read as follows: "*Particular Issues. When appropriate, an action may be maintained as a class action with respect to particular issues.*" The revisions were not intended to change the meaning of the subprovision. To the contrary, the 2007 amendment was meant "to be stylistic only" in order to make the rule "more easily understood. . . ." *See* Fed. R. Civ. P. 23 advisory

committee's note to 2007 amendments. In this court's opinion, the amendment accomplished its objective. The combination of the new title and simplified text leaves no room for confusion that subprovision (c)(4) allows the certification of specific issues for classwide resolution.

Further evidence that the 2007 amendments were intended to be "stylistic only" lies in the Advisory Committee Notes to the 1966 amendments. Years before any rift between the circuit courts emerged, the committee notes confirmed that subdivision (c)(4) "recognizes that an action may be maintained as a class action as to particular issues only." Fed. R. Civ. P. 23 advisory committee's note to 1966 amendments. As an example, the notes explained that a cause of action "in a fraud or similar case . . . may retain its 'class' character only through the adjudication of liability to the class . . . ." *Id.* Thereafter, "the members of the class may [ ] be required to come in individually and prove the amounts of their respective claims." *Id.* This suggested multi-staged procedure—partly certified, partly on an individual basis—mirrors the text of the post-2007 amendment version of the rule and accords with the Second, Third, and Ninth Circuits' approach. *See In re Nassau County*, 461 F.3d at 226; *Hohider*, 574 F.3d at 200-02; *Valentino*, 97 F.3d at 1234.

In addition to the Advisory Committee Notes, legal commentators agree that sub-provision (c)(4) was drafted to facilitate the certification of issue-specific classes. *See* 5 MOORE'S FEDERAL PRACTICE § 23.23 (3d ed. 2014) ("[W]e note that the commentators agree that courts may use subsection (c)(4) to single out issues for class treatment when the action as a whole does not satisfy Rule 23(b)(3). Rule 23(c)(4) authorizes the court, when appropriate, to limit class treatment to specific common issues only, and to measure

13

the requirements of Rule 23 accordingly. Under Rule 23(c)(4), a court may fashion a class action limited to trying a particular defense that is common to a large number of putative class members; resolving certain common preliminary issues; or determining liability, with proof of damages left to each class member in a later proceeding."); 7AA Wright & Miller, *Federal Practice & Procedure* § 1790 (3d ed. 2005) ("[A]lthough Rule 23(c)(4) may be utilized to cure unforeseen problems that emerge in later stages of the litigation, it best may be used to designate appropriate classes or class issues at the certification stage."); William B. Rubenstein, Alba Conte, and Herbert B. Newberg, 6 Newberg on Class Actions § 18:7 (4th ed. 2002) ("Even cases which might not satisfy the predominance test when the case is viewed as a whole may sometimes be certified as a class limited to selected issues that are common, under the authority of Rule 23(c)(4).").

Having considered all of this authority, this court opts to follow the Second, Third, and Ninth Circuits' approach and holds that a class may be certified as to particular issues concerning liability even if the claim as a whole does not meet the predominance requirement of Rule 23(b)(3).

With this framework in mind, the court now assesses whether any issues in this case are appropriate for classwide resolution pursuant to subprovision (c)(4). No Seventh Circuit authority instructs when certification of an issue-only class is "appropriate." Instead, the Seventh Circuit has counseled on the circumstances when partial certification is *not* appropriate. *See In re Rhone-Poulenc Rorer Incorp.*, 51 F.3d 1293, 1297-1304 (7th Cir. 1995).

In *Rhone-Poulenc*, the Seventh Circuit directed the district court to decertify a class of hemophiliacs who, after contracting the AIDS virus, sued several manufacturers of blood solids under a negligence theory. *Id.* at 1294. The Seventh Circuit based its ruling on three "concerns." *Id.* at 1299. First, the size of the class and amount at stake in each individual claim weighed against proceeding on a classwide basis. *Id.* An adjudication of the defendants' negligence as to the class likely would have bankrupted the defendants, while the potential individual damages awards were sufficiently large that it was feasible for each class member to pursue his or her case separately. *Id.* at 1299-1300. Second, the putative class was nationwide, which would have required "a jury to determine the negligence of the defendants under a legal standard that [did] not actually exist anywhere in the world." *Id.* at 1300. The court found that one instruction on negligence somehow merging the different state law standards of care would have violated *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-80 (1938) and blurred important distinctions in state law. Third, the court took issue with the district court's proposal to bifurcate "the trial of the issues that [were] certified for class action treatment from the other issues involved in the individual class members' suits." *Id.* at 1302. Perceiving an unavoidable overlap between the common issue of the defendants' negligence and what individuals would have to prove to be entitled to damages, the Seventh Circuit foresaw that subsequent juries would have to retry the negligence findings of the first jury. *Id.* at 1303. "The right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them . . . and not reexamined by another finder of fact." *Id.* The court thus viewed

15

the district court's trial plan as "inconsistent with the principle that the findings of one jury [ ] not be reexamined by" another. *Id.*

The Third Circuit has developed a useful list of factors for courts to consider in certifying an issue-only class:

> [W]hen deciding whether or not to certify an issue class, the trial court should consider: the type of claim(s) and issue(s) in question; the overall complexity of the case; the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*See Gates v. Rohm & Haas*, 655 F.3d 255, 273 (3d Cir. 2011) (citing Principles of the Law of Aggregate Litigation §§ 2.02-05 (2010)).

Here, several common issues meet the *Gates* criteria for partial certification and do not raise the concerns present in *Rhone-Poulenc*. The issues include: (i) whether DirectSat "defined technicians' work day as the time between when they arrived at their first job and the time they completed their last job;" (ii) whether the plaintiff-technicians "should have been compensated for the time spent driving from home to their first customer site and driving home from their last job of the day;" (iii) whether "the federal Employee Commuter Flexibility Act, 29 U.S.C. § 254(a)(2), renders the technicians' commuting time not compensable;" and (iv) whether "activities such as maintaining

16

vehicles, receiving assignments, loading/unloading equipment, and calling customers should have been compensated when not performed between the start and finish of the work day as defined by DirectSat policies. . . ." *See Jacks v. DirectSat USA, LLC*, No. 10-cv-1707, 2012 U.S. Dist. LEXIS 86422, at *14-17 (N.D. Ill. June 19, 2012).

Collective adjudication of these issues would further the goals of efficiency and uniformity in decision-making that underlie Rule 23. All of the issues relate either to DirectSat's policies or practices or to their legality under the IMWL, which requires an employer in Illinois to pay an hourly minimum wage to employees. *See* 820 ILCS 105/1 *et seq.* The issues are separate and severable from the effect DirectSat's policies and practices had upon individual class members: injury-in-fact and damages. Holding a single proceeding to resolve the common issues "in one stroke," *Butler*, 727 F.3d at 801, would be most efficient and materially advance the litigation because subsequent courts would be spared from having to adjudicate the common issues "anew in each case." *See McReynolds*, 672 F.3d at 491-92. Follow-up proceedings would solely have to address (1) the injury-in-fact of the class members who file suit after the issue class is decertified, and (2) any defenses DirectSat raises against each individual plaintiff's claims. Partial certification would also ensure consistency in result, as only one court would have to determine the "central, common issue[s] of liability." *Butler*, 727 F.3d at 801.

DirectSat opposes partial certification of the class. It claims that a bifurcated trial with separate liability and damages phases is infeasible, since Plaintiffs cannot present representative proof of damages. *See Espenscheid*, 705 F.3d at 774-76. This concern would be valid if the court bifurcated the case for proceedings on liability and damages, both on a classwide basis. But that plan is not the procedure the court contemplates.

DirectSat further cautions the court that "865 separate hearings loom" if the court partially certifies the class. That may or may not be the case. Of course, DirectSat and the court know full well that an avalanche of individual suits is highly improbable, given that each class member's damages pale in comparison to the costs of litigating a wage and hour case to trial against DirectSat. So a trade-off emerges: is it better (1) to decertify the class altogether, despite the risk that few, if any, class members will pursue their individual claims, or (2) to certify appropriate, common issues for classwide determination and table damages determinations for separate trials? Seventh Circuit precedent advises that the correct answer is the latter:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.

*Butler*, 727 F.3d at 801.

Accordingly, it is hereby ORDERED that:

(1)     Defendants' motion is granted, and the class previously certified for all purposes is vacated.

(2)     The following class is certified for the resolution of particular issues: "All individuals who were employed or are currently employed by DirectSat in the state of Illinois as technicians or in other similarly titled positions at any time between June 12, 2008, and February 9, 2010."

(3)     The named plaintiffs previously appointed as class representatives will remain class representatives consistent with the court's June 19, 2012 order.

(4)     The parties shall meet and confer to propose a certification order enumerating the issues that will be tried on a classwide basis. Plaintiffs shall submit this order by March 31, 2015.

(5)     Status in this matter is set for April 8, 2015. During this status conference, the court will hear counsel's suggestions for any necessary amendments to the class and issues to be certified.

(6)     Lead counsel shall submit proposals for class notification within fourteen days of the court's certification of the enumerated issues.

ENTER:

_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED:   March 10, 2015